IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 20-cv-00631-PAB-NRN

CHRISTOPHER ERIC MASTERS,

      Plaintiff,

v.

SAFECO INSURANCE COMPANY OF AMERICA,

      Defendant.

---

**ORDER**

---

      This matter is before the Court on Defendant's Motion for Partial Summary Judgment and Memorandum Brief in Support Thereof [Docket No. 41] and Plaintiff's Motion for Partial Summary Judgment [Docket No. 42]. Both parties seek summary judgment on plaintiff's common law and statutory bad faith claims. Docket No. 41 at 1; Docket No. 42 at 1. The parties responded to each other's motions, Docket Nos. 44 and 45, and replied. Docket Nos. 46 and 47. The Court has jurisdiction under 28 U.S.C. § 1332.

**I. BACKGROUND[1]**

      This dispute arises out of a November 18, 2017 automobile accident in Denver, Colorado. Docket No. 41 at 2, ¶ 1. Plaintiff informed defendant on November 29, 2017 that he would file an under-insured motorist ("UIM") benefits claim. *Id.* at ¶ 2. That same day, defendant sought copies of plaintiff's medical bills, records, and

---

[1] All facts are undisputed unless otherwise noted.

authorizations to begin evaluating plaintiff's claim.  *Id.* at 3, ¶ 3.  Defendant requested

additional information multiple times between December 5, 2017 and July 12, 2018.

*Id.*, ¶¶ 4, 6.  On June 25, 2018, plaintiff confirmed that he had completed his medical

treatment and was in the process of obtaining his records.  *Id.*, ¶ 5.

On June 21, 2018, plaintiff submitted a demand letter to the other driver's

insurer, claiming past medical expenses of $37,775.75.  Docket No. 42 at 5, ¶¶ 3–4.[2]

On July 19, 2018, plaintiff informed defendant that he had received a settlement offer

from the other driver's insurer for $50,000.00.  Docket No. 41 at 3, ¶ 7.  Plaintiff then

requested that defendant evaluate his UIM claim and forwarded defendant the demand

letter.  *Id.* at 4, ¶ 8.[3]  At plaintiff's deposition, he testified that the $37,775.75 figure was

correct.  Docket No. 45 at 10–11, ¶ 11.  Defendant asked for additional information

---

[2] Plaintiff states that he submitted his demand on *July* 21, 2018, yet cites to
Docket No. 42-3, which is dated *June* 21, 2018.  The Court presumes this is a
typographical error and that June is correct since plaintiff received a settlement offer on
July 19, 2018.  *See* Docket No. 41 at 5, ¶ 7; Docket No. 44 at 5, ¶ 7.

[3] There is no dispute that plaintiff's demand to the other driver's insurer, which
plaintiff forwarded to defendant, claimed $37,775.75 in past medical expenses.  *See*
Docket No. 41 at 4, ¶ 8; Docket No. 44 at 5, ¶ 8.  Yet, in his own motion, plaintiff states
that his initial Colo. R. Civ. P. 26(a)(1) disclosures, served on August 14, 2019, reflect
past medical bills of $38,521.97.  Docket No. 42 at 5, ¶¶ 6–7 (citing Docket No. 42-6 at
8).  Defendant disputes this assertion and states that plaintiff's disclosure claims past
medical expenses of $40,932.95.  *See* Docket No. 45 at 3–4, ¶ 6.  The disclosures that
plaintiff provided to substantiate this fact also reflect the $40,932.95 figure.  *See* Docket
No. 42-6 at 8.  Plaintiff states that he amended his disclosures on September 4, 2019.
Docket No. 42 at 5, ¶ 8 (citing Docket No. 42-7 at 8).  The parties appear to agree that
plaintiff's September 4, 2019 amended disclosures claim past medical expenses of
$38,521.97.  *See id.*; Docket No. 42-7 at 8; Docket No. 45 at 3–4, ¶ 6; *id.* at 10, ¶ 8.
The parties also appear to agree that plaintiff's initial demand to defendant was
$746.22 lower than his September 4, 2019 damages calculation.  Docket No. 45 at 10,
¶ 9; Docket No. 47 at 4, ¶ 9.  In defendant's response, it contends that, on May 29,
2019, plaintiff served Fed. R. Civ. P. 26(a)(1) disclosures claiming $37,775.75 in past
medical expenses.  Docket No. 45 at 3–4, ¶ 6 (citing Docket No. 45-3 at 8).

pertaining to plaintiff's medical bills and records, as well as lost wages, and provided consent for plaintiff to settle with the other driver's insurer.  Docket No. 41 at 4, ¶¶ 9–10. On September 7, 2018, defendant extended $1,000.00 to plaintiff in UIM benefits, informed plaintiff that offer was made without prejudice, and requested additional information to evaluate plaintiff's UIM claim.  *Id.*, ¶ 11.  Plaintiff provided his 2017 individual income tax return and a list of 56 days on which he claimed he missed work. *Id.*, ¶¶ 12–13.[4]  Plaintiff had previously represented his income as $11,318.42 per month or $135,821.04 per year; however, the tax return that plaintiff provided to defendant stated that his income was $76,524.00 in 2017.  *Id.* at 5, ¶ 14.[5]  Plaintiff then requested a breakdown of defendant's evaluation on September 11, 2018 and September 25, 2018 to identify the amounts defendant was considering authorizing for economic and non-economic loss and physical impairment.  Docket No. 44 at 9, ¶ 48.

On September 25, 2018, defendant began the process of scheduling an independent medical examination ("IME") to evaluate plaintiff's claim; plaintiff's counsel was reluctant to agree to an examination by the physicians that defendant offered. Docket No. 41 at 5, ¶¶ 16–17.  On October 17, 2018, defendant reminded plaintiff of his

---

[4] Plaintiff contends that he also provided a letter explaining his "credit numbers" to defendant.  Docket No. 44 at 5, ¶ 12 (citing Docket No. 41-11 at 22).

[5] Plaintiff purports to deny this fact.  The Court finds, however, that there is no genuine dispute.  Plaintiff states that he listed his income as $135,821.04 on the demand letter to the other driver's insurer, that he is a sole proprietor of his business, and that the income listed on his tax return does not reflect deductions permitted by the Internal Revenue Service, such as the use of a home office, marketing expenses, or insurance premiums.  Docket No. 44 at 5, ¶ 14.  Plaintiff cites to his Form 1040, detailing profit from his business, which states that his *gross* income totaled $135,821 and that his *net* income, after deducting expenses, was $76,524.  *See* Docket No. 44-15 (cents are not included).

duty to attend an IME, and on October 26, 2018, plaintiff agreed to one.  *Id.*, ¶¶ 18–19.

On November 2, 2018, defendant sent plaintiff a letter accepting plaintiff's claim of 56 days of missed work.  *Id.* at 5–6, ¶ 20.  Ultimately, defendant accepted that plaintiff worked on average 240 days per year and calculated plaintiff's per diem to be $318.85, which, when multiplied by 56 days missed, results in $17,855.60.  *Id.* at 6, ¶ 22; *see also* Docket No. 44 at 8, ¶ 40.  As defendant had already paid plaintiff $1,000.00, defendant's evaluation of plaintiff's total claim was $18,855.60.  Docket No. 44 at 8, ¶ 40.

Plaintiff continued to contest defendant's reliance on his individual income tax return and insisted that defendant should have used the business revenue from his sole proprietorship.  Docket No. 41 at 6, ¶ 23.[6]  Defendant felt that the $76,524.00 reported on plaintiff's individual tax return was the "biggest piece of support [defendant had] to go off of in order to compensate [plaintiff] for the financial impact this accident had on him," yet it acknowledged that it would be "happy to review any additional wage loss supporting documentation."  *Id.*, ¶ 24.[7]  However, defendant agreed that a reduction in

---

[6] Plaintiff purports to deny this fact, but the Court finds there is no genuine dispute.  Plaintiff states, "[p]laintiff is a sole proprietor, meaning that his business is not a separate legal entity.  While it appears to be undisputed that the loss of revenue harmed the [p]laintiff, the parties dispute whether the [d]efendant should have considered that harm in determining the financial impact that the collision had on the [p]laintiff."  Docket No. 44 at 6, ¶ 23.  Plaintiff thus seems to agree with defendant's characterization of the dispute.

[7] Plaintiff purports to dispute this, yet the Court finds no genuine disagreement, as plaintiff states that he "disputes the substance of that statement – i.e. that the net income most accurately reflected the financial impact."  Docket No. 44 at 6, ¶ 24.  This is not a denial that defendant believed that plaintiff's individual tax return was the most appropriate reflection of his income.  *See* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly . . . address another party's assertion of fact . . . , the court may: . . . consider

revenue harmed plaintiff and acknowledged that there are fixed expenses claimed in plaintiff's tax documents whether or not he would have made any money on a given day.  Docket No. 44 at 7, ¶¶ 34–35.

The IME, performed by Dr. Alexandra Feldman, found that plaintiff suffered a "4% whole person impairment," *id.* at 8–9, ¶ 42, and "recommended" an additional six to eight physical therapy visits, but found that plaintiff had no work restrictions, sustained no disability because of the accident, and had reached "maximum medical improvement."  Docket No. 41 at 7–8, ¶¶ 26–29.[8]  Dr. Feldman also found that all of plaintiff's past medical treatment was appropriate and medically necessary, with the exception of chiropractic care more than six months after the accident.  Docket No. 42 at 5, ¶ 10.  Defendant obtained a second report from Dr. Feldman, but that report did not address additional bills disclosed by plaintiff.  Docket No. 42 at 5, ¶ 11.  While defendant generally adjusts all claims when new information is received, defendant declined to say whether it adjusted plaintiff's claim during litigation.  *Id.* at 6, ¶¶ 16–17.[9]

Dr. Rentz opined that plaintiff suffered "physical bodily damage and limitations"

the fact undisputed for purposes of the motion.")

[8] Plaintiff purports to dispute these facts yet, in response to each of these facts, plaintiff states that the opinions of defendant's "retained expert conflict with [p]laintiff's treating medical providers.  Therefore, the substance of these opinions remain disputed facts."  *See* Docket No. 44 at 6–7, ¶¶ 26–29.  These responses are not denials about what the IME concluded, however.  These facts are therefore deemed admitted.

[9] Defendant claims to dispute this fact, yet defendant states only that it objected to a question by plaintiff's counsel in a Fed. R. Evid. 30(b)(6) deposition in accord with a discovery order of Magistrate Judge Neureiter.  Docket No. 45 at 7–8, ¶ 17.  This denial is non-responsive, and Magistrate Judge Neureiter expressly permitted plaintiff's counsel to ask questions about post-litigation adjustment of the claim based on new information.  *See* Docket No. 25 at 1.

as a result of the accident, that plaintiff's limitations are permanent, and that plaintiff is at risk of developing additional injuries. Docket No. 44 at 9, ¶ 45 (citing Docket No. 44-29 at 3); *id.* at 10, ¶ 56.

Following further discussions, defendant agreed to extend $30,665.03 in UIM benefits. Docket No. 41 at 8, ¶¶ 30–31. Plaintiff requested an itemization, and defendant explained its calculation on January 29, 2019 as follows:

| | |
|---|---|
| **Past Specials Submitted/Accepted:** | $37,775.75 |
| **Future Specials Submitted:** | $6,901.00 |
| **Future Specials Accepted:** | $2,302.08 |
| ($287.16 x 8 additional visits as suggested in the independent medical examiner report = $2,302.08) | |
| **Mileage Submitted/Accepted:** | $198.46 |
| **Wage Loss Submitted:** | $31,691.52 |
| **Wage Loss Accepted:** | $21,362.95 |
| **General Damages:** | $19,025.79 |
| (which takes into consideration the injuries/ treatment/ physical impairment/ additional visits of physical therapy) | |
| **TOTAL VALUE:** | $80,665.03 |
| **Offset:** | ($50,000.00) (BI Settlement) |
| **UIM Settlement Offer:** | $30,665.03 |

*Id.* at 8–9, ¶¶ 32. Thus, defendant authorized payment for the additional physical therapy visits. Docket No. 44 at 9, ¶ 44. Defendant did not, however, consider information provided during litigation. *Id.* at 10, ¶ 54 (citing Docket No. 41 at 17).[10]

---

[10] Defendant purports to deny this fact; however, its denial is non-responsive. Defendant states, "Safeco stated the correct legal standard in its Motion for Partial Summary Judgment: 'Material and admissible evidence concerning [p]laintiff's extra-contractual claims is limited to the facts prior to the onset of litigation." Docket No. 46 at 6, ¶ 54. The statement that defendant "stated the correct legal standard" does not

Defendant also has not produced a claims file covering the adjustment of plaintiff's claim during the course of this litigation or provided evidence regarding adjustment during litigation.  Docket No. 42 at 6, ¶¶ 20–21.

## II.  LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248–50 (1986).  A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc*., 259 F.3d 1226, 1231–32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment.  *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted).  "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter."

respond to plaintiff's statement that defendant did not consider information provided during litigation.  Therefore, this fact is deemed admitted.

*Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994).  The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted).  "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115.  When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  *Id.*

## III.  ANALYSIS

In his amended complaint, plaintiff states three claims for relief: (1) breach of contract, (2) common-law bad faith, (3) and statutory bad faith.  Docket No. 5 at 7–9.  The parties' motions concern only plaintiff's bad faith claims.  Plaintiff argues that defendant violated its duty of good faith and fair dealing when it failed to "diligently search for evidence that supported" plaintiff's claims and instead sought evidence that defeated or minimized plaintiff's claims.  *Id.* at 8, ¶¶ 68–69.  Plaintiff also contends that defendant unreasonably delayed or denied benefits, or withheld benefits without a reasonable basis for doing so.  *Id.*, ¶ 70.  Plaintiff argues that defendant relied solely on Dr. Feldman's review and examination and disregarded the opinions of plaintiff's treating physicians.  *Id.* at 9, ¶ 76.  Finally, plaintiff argues that defendant acted with knowledge or a reckless disregard of its unreasonable delay or denial.  *Id.* at 8, ¶ 70.

Colorado has a statutory bad faith law, whereby an insurer may not "unreasonably delay or deny payment of a claim for benefits owed to or on behalf of

any first-party claimant."  Colo. Rev. Stat. § 10-3-1115(1)(a).  An insurer's delay is unreasonable "if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action."  Colo. Rev. Stat. § 10-3-1115(2).  The determination of whether an insurer has breached its duties to the insured is one of reasonableness under the circumstances.  *Estate of Morris v. COPIC Ins. Co.*, 192 P.3d 519, 523 (Colo. App. 2008).  In other words, the question is whether a reasonable insurer under similar circumstances would have denied or delayed payment of the claim.  *Id.*  The reasonableness of an insurer's conduct must be determined objectively, based on proof of industry standards.  *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1274 (Colo. 1985).  Whether an insurer's conduct was reasonable under the circumstances is ordinarily a question of fact for the jury when conflicting evidence exists.  *Zolman v. Pinnacol Assurance*, 261 P.3d 490, 497 (Colo. App. 2011).  However, in appropriate circumstances, as when there are no genuine disputes of material facts, reasonableness may be decided as a matter of law.  *COPIC*, 192 P.3d at 524.

Section 10-3-1115(2) forbids an insurer from delaying or denying payment without a "reasonable basis."  The Tenth Circuit has held there is "nothing unreasonable about [an insurance company's] denial of [a plaintiff's] claim because it had a reasonable basis for its action."  *Wagner v. Am. Fam. Ins. Co.*, 569 F. App'x 574, 580 (10th Cir. 2014); *see also Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1226 (10th Cir. 2016) (quoting *Vaccaro v. Am. Fam. Ins. Grp.*, 275 P.3d 750, 759–60 (Colo. App. 2012)) ("[I]f a reasonable person would find that the insurer's justification for denying or delaying payment of a claim was 'fairly debatable,' this weighs against a finding that the

9

insurer acted unreasonably.")).  In Colorado, acting "without a reasonable basis" has been construed to mean pursuing a groundless position that is not supported by credible evidence.  *See Bd. of Cnty. Comm'rs v. Auslaender*, 745 P.2d 999, 1001 (Colo. 1987) (interpreting "without a reasonable basis" in a statute regarding the award of attorney fees in litigation against a public entity).

To succeed on a common law claim of bad faith breach of an insurance contract, "a plaintiff must show that the insurer acted both unreasonably and with knowledge of or reckless disregard of its unreasonableness."  *Hyden v. Farmers Ins. Exch.*, 20 P.3d 1222, 1226 (Colo. App. 2000).  Colorado courts have held that it is reasonable for an insurer to challenge claims that are "fairly debatable."  *Zolman*, 261 P.3d at 496.  Thus, under common law, finding that an insurer's justification for denying or delaying payment of a claim is "fairly debatable" typically weighs against finding that an insurer acted unreasonably.  *Sanderson v. Am. Family Mut. Ins. Co.*, 251 P.3d 1213, 1218 (Colo. App. 2010) (citation omitted).

The "burden of proving th[e] statutory claim is less onerous than that required to prove a claim under the common law for breach of the duty of good faith and fair dealing."  *Kisselman v. Am. Family Mut. Ins. Co.*, 292 P.3d 964, 975 (Colo. App. 2011). "While first-party bad faith principles require a plaintiff to establish that the insurer knew or recklessly disregarded the fact that its conduct was unreasonable, . . . the statutory claim requires only that a first-party claim be denied without a reasonable basis." *Vaccaro*, 275 P.3d at 756 (citations omitted).

Defendant argues that plaintiff incurred $37,775.75 in medical expenses and

defendant evaluated plaintiff's UIM claim at $80,665.03.  Docket No. 41 at 1.  Because plaintiff already received $50,000.00 from the other driver's insurer, defendant authorized payment of the remaining $30,665.03.  *Id.*  Defendant claims that it is entitled to summary judgment because, although plaintiff now argues that he is entitled to recover additional UIM benefits, there is no dispute of material fact that he did not initially allege such claims when he filed this lawsuit, meaning that defendant's denial of his "extra-contractual" claims was not in bad faith.  *Id.* at 2.

Plaintiff also seeks summary judgment on these claims and argues that defendant had a continuing duty to adjust plaintiff's claim as plaintiff provided new information on his losses, including after the onset of litigation.  Plaintiff argues that defendant did not "continue to act reasonably" when it "refused to look at any information received during litigation."  Docket No. 42 at 7–8.

### A.  Statutory Bad Faith Claim

Defendant insists that, because it accepted in full plaintiff's past medical expenses and medical mileage, the only expenses that remain pertain to plaintiff's claims for lost wages, future medical treatment, and general damages.  Docket No. 41 at 12.  Plaintiff does not appear to contest this categorization but argues that defendant has not paid the entirety of his past medical expenses.  *See* Docket No. 42.

### 1.  Lost Wages

As to plaintiff's lost wage claim, the parties disagree on whether it was appropriate for defendant to calculate plaintiff's lost wages from his individual income tax return or whether defendant should have used plaintiff's gross business revenue.

*Id.* at 12–13.  Defendant argues that it was appropriate to use plaintiff's individual income tax return, and the undisputed facts confirm that defendant stated that it was willing to review additional supporting documentation that plaintiff might provide to support his claim for lost wages.  *Id.*; *see also id.* at 6, ¶ 24.

Plaintiff argues that defendant acted unreasonably because it used the "lowest possible figures to determine his wage loss claim" while acknowledging that "many of [plaintiff's business] expenses were fixed, such as insurance premiums, and did not impact his daily income."  Docket No. 44 at 14.  Plaintiff contends that defendant "insisted on subtracting those figures before calculating [plaintiff's] per diem wage loss."  *Id.*  Plaintiff also claims that defendant refused to consider that loss of business revenue harmed plaintiff financially.  *Id.*  Finally, plaintiff states that he provided additional information during the course of the litigation that defendant did not consider despite its duty to do so.  *Id.* at 15.

The Court must determine whether calculating plaintiff's lost wages based on his individual tax return means that defendant did not act with a reasonable basis. Defendant relies on *Wilson v. State Farm Auto Mut. Auto. Ins. Co.*, 934 F.2d 261, 263–64 (10th Cir. 1991).  In *Wilson*, the court confronted the issue of whether a sole proprietor's claim for lost wages under a Colorado law dealing with personal injury protection benefits should be calculated by her "lost *personal* gross income" rather than the "income generated by the claimant's business."  *Id.* at 263.  The court held that, because the law was designed to ensure that people injured in car accidents were fully compensated for their injuries, the legislature intended to compensate individuals, not

businesses, and the court concluded that "[t]o compensate the sole proprietor based upon the gross income generated by the *proprietorship* would be to unfairly compensate her for her business expenses." *Id.* at 263–64. While the statute at issue in *Wilson* is not the same statute at issue here,[11] plaintiff does not attempt to distinguish the case, and the Court finds the reasoning persuasive. *See also Ramirez v. Veeley*, 757 P.2d 160, 162 (Colo. App. 1988) ("We conclude that loss of gross income per week pursuant to [CAARA] must be computed on an individual's gross income and not on the gross sales or income of the individual's business.").

As mentioned above, acting "without a reasonable basis" means pursuing a groundless position that is not supported by any credible evidence. *See Auslaender*, 745 P.2d at 1001. The Court finds that a reasonable jury could not find that defendant pursued a groundless position not supported by credible evidence when it calculated plaintiff's lost wages based on the individual tax returns that plaintiff submitted to defendant to substantiate his losses.[12]

### 2. Medical Expenses

#### a. Future Medical Expenses

Defendant states that plaintiff claimed $6,901.00 in future medical expenses.

---

[11] *Wilson* applied the Colorado Auto Accident Reparations Act ("CAARA"), which mandated minimum coverage to compensate injured drivers for the "work the injured person would have performed had he not been injured." *Id.* at 263 (emphasis omitted).

[12] Plaintiff also argues that defendant had a duty to consider additional information provided during the litigation. Docket Nos. 42 at 8–11; 44 at 15. The Court does not reach this argument because it has determined that no reasonable jury could find that defendant's calculation of plaintiff's lost wages was unsupported by any credible evidence.

Docket No. 41 at 13.  The IME concluded that plaintiff may benefit from six to eight additional physical therapy visits, and defendant thereafter authorized payment to plaintiff for eight visits.  *Id.*  Defendant argues that, because it followed the conclusion of the IME, it is entitled to summary judgment as to plaintiff's claim for future medical expenses because the IME provided a reasonable basis for its calculation of those expenses and there is, therefore, no genuine dispute of material fact that defendant's coverage determination was not groundless.  *Id.* at 14.  Additionally, defendant argues that it is entitled to summary judgment on plaintiff's claim for future medical expenses because plaintiff testified that he declined his providers' recommendations of additional treatment.  *Id.*

Plaintiff argues that Dr. Jack Rentz and another medical provider, Jennifer Ivey, MPT, recommended future care in medical records that were provided to defendant. Docket No. 44 at 13.  Plaintiff contends that defendant "declined to consider the[se] opinions" and instead chose to "act only on the opinions of its retained medical provider," who conducted the IME.  *Id.* at 14.  Plaintiff also states that he provided additional information during the course of litigation that substantiates his future medical expenses claims.  *Id.* at 15.

Plaintiff argues that defendant did not act in good faith because it unreasonably delayed or denied his claim when it followed the conclusion of the IME without considering the opinions of Dr. Rentz and Ms. Ivey.  When asked whether further treatment was necessary, Dr. Feldman, who performed the IME, stated that plaintiff needed no additional treatment beyond possibly six to eight sessions of physical therapy.  Docket No. 41 at 7, ¶ 26.  There is no dispute that defendant extended

14

payment for eight sessions.  *Id.* at 8–9, ¶ 32; Docket No. 44 at 7, ¶ 32.

Plaintiff disputes Dr. Feldman's findings as being inconsistent with the opinions of his treating physicians.  Docket No. 44 at 6, ¶ 26 (citing Docket No. 44-26 at 2). Plaintiff also argues that it was unreasonable for defendant to rely on Dr. Feldman's determination to the exclusion of his providers' opinions.  *Id.* at 13–14.  "[C]ompeting expert opinions present the classic battle of the experts and it is up to a jury to evaluate what weight and credibility each expert opinion deserves."  *OraLabs, Inc. v. Kind Grp. LLC*, No. 13-cv-00170-PAB-KLM, 2015 WL 4538444, at *5 (D. Colo. July 28, 2015) (quoting *Phillips v. Cohen*, 400 F.3d 388, 399 (6th Cir. 2005) (alteration marks in original)); *Leeper v. Allstate Fire & Cas. Ins. Co.*, No. 13-cv-03460-PAB-KMT, 2016 WL 1089701, at *4 (D. Colo. Mar. 21, 2016) ("[T]he Court cannot conclude that no reasonable jury could find that Allstate acted unreasonably in preferring Dr. Douthit's opinion to Dr. Parker's contrary opinion without weighing those opinions and drawing conclusions as to their respective value.").  Given this factual dispute, the Court finds that summary judgment is not appropriate with respect to plaintiff's statutory bad faith claim for future medical expenses.

Plaintiff argues that a jury could find that defendant failed to act reasonably, and thereby did not satisfy its duty to investigate plaintiff's claim, when it relied only on Dr. Feldman's IME, which supports defendant's interests, over the opinions of plaintiff's medical providers, which support plaintiff's interests.  Docket No. 44 at 16–17.  In plaintiff's disclosure of Dr. Rentz's testimony, plaintiff states that Dr. Rentz will testify that plaintiff may need future medical care including "continued facet injections, medical

15

branch blocks, radiofrequency treatments, and potentially an anterior cervical discectomy and fusion at C3-4." Docket No. 31-4 at 2, 4. Defendant had these records when it evaluated plaintiff's claim. *See* Docket No. 44 at 9, ¶ 43.

Defendant's argument that it conducted itself reasonably is threefold. First, defendant argues that, because it extended future medical expenses benefits consistent with the recommendation of the IME – for eight physical therapy visits – its coverage determination was not groundless because it was supported by credible evidence. Docket No. 41 at 13–14. However, given that defendant states only that it considered the IME and does not explain why it discounted the opinions of plaintiff's providers, *see id.* at 13–14 ("Because [defendant] followed the recommendations of the independent medical examiner, it had a reasonable basis when it calculated and paid [p]laintiff for his claim for future medical expenses."), plaintiff has shown a genuine dispute of material fact as to whether defendant conducted a reasonable investigation of plaintiff's claims.

Second, defendant argues that, because plaintiff ultimately declined further medical treatment, "the undisputed facts do not support [p]laintiff's allegation that [defendant] lacked a reasonable basis for its decision." *Id.* at 13–14. The reasonable basis, defendant argues, is plaintiff's refusal to obtain the recommended care. Defendant's argument is unconvincing. While defendant is correct that plaintiff testified that he declined future care,[13] defendant has not shown that it was aware of plaintiff's

---

[13] Plaintiff testified at his deposition that he "declined" the "recommendation from the injection people." Docket No. 41-25 at 3–4, 92:23–93:3. When asked what medical treatment plaintiff has received has received since June 2018, plaintiff said, "I mean, I've gone to the chiropractor a couple times randomly, but nothing – I'm not going to the

treatment decision before plaintiff's deposition on December 19, 2019.  Therefore,

plaintiff's decision not to obtain the recommended future medical care cannot have

formed the basis of defendant's coverage determination when it evaluated plaintiff's

claim in 2018 and 2019.  *See Schultz v. GEICO Cas. Co.*, 429 P.3d 844, 848–49 (Colo.

2018) ("an insurer's decision to deny benefits to its insured must be evaluated based on

the information before the insurer at the time of that decision") (internal citation and

quotation omitted).  Furthermore, although plaintiff declined care in the past, there is no

indication that plaintiff may not need care and obtain care in the future.

      Third, defendant argues that plaintiff provided his estimated future medical

expenses after plaintiff filed suit.  Docket No. 41 at 15.  Plaintiff, however, provided the

medical records to defendant in July 2018 while the claim was being adjusted.  *See*

Docket No. 44 at 9, ¶ 43.  Defendant, therefore, could have calculated plaintiff's future

medical expenses without relying on plaintiff's expert economist, as insurance

companies routinely calculate their insureds' future medical expenses in adjusting

claims and making coverage decisions.  Moreover, it is understandable that plaintiff

may not have been able to provide a precise estimate as to the costs of his future

medical care when he filed his claim, given that expert testimony is often required to

calculate the cost of a medical expense.  *See, e.g.*, *Dedmon v. Cont'l Airlines, Inc.*, No.

13-cv-0005-WJM-NYW, 2016 WL 471199, at *4 (D. Colo. Feb. 8, 2016) ("Various

---

doctor, if that's what you're asking."  *Id.* at 4, 93:4–9.  When asked what he visited his
chiropractor for and when, plaintiff testified that it was for "[s]tiffness" and that "since
last summer – I don't know – four or five [times].  Maybe like three or four.  I don't
know."  Aside from these visits to his chiropractor, he has not sought additional medical
care "for anything related to the accident."  *Id.* at 4, 93:9–22.

decisions from this Court have assumed or concluded, with little or no analysis, that the expert testimony is required to establish the reasonable value of a medical expense."); *see also Xiong v. Thompson*, 2014 U.S. Dist. LEXIS 113622, at *2 (D. Colo. Aug. 15, 2014); *Davis v. Prop. & Cas. Ins. Co. of Hartford*, No. 13-cv-01163-CMA-KMT, 2014 WL 1757952, at *1 (D. Colo. May 2, 2014); *White v. Kaiden*, No. 05-cv-01294-PSF-MEH, 2006 WL 2346372, at *2 (D. Colo. Aug. 11, 2006).  Plaintiff has shown that there is a genuine dispute of material fact as to the value of his future medical expenses claim and that a reasonable jury could find that defendant acted unreasonably in its evaluation plaintiff's claim for future medical expenses.

### b.  Past Medical Expenses

Plaintiff's motion for partial summary judgment largely concerns plaintiff's demand for payment of his past medical expenses.  Plaintiff argues that it is undisputed that he submitted medical bills to defendant during litigation and that defendant failed to continue to fairly adjust and evaluate plaintiff's claim, which plaintiff argues constitutes bad faith because an insurer has a duty to continue to adjust the claim in light of new information, even during litigation.  Docket No. 42 at 9–10.  The undisputed facts establish that plaintiff submitted a demand letter to the other driver's insurer for $37,775.75 in past medical expenses and that defendant has considered $37,775.75 in past medical expenses.  *Id.* at 5, ¶¶ 4, 9.  Although there appears to be some confusion regarding when plaintiff provided his final past medical expenses figure, the parties seem to agree that plaintiff's amended September 4, 2019 disclosures claim past medical expenses of $38,521.97.  *Id.* at 5, ¶ 8 (citing Docket No. 42-7 at 8); Docket No.

45 at 3–4, ¶ 6; *id.* at 10, ¶ 8; Docket No. 47 at 3, ¶ 6.[14]  The issue, as plaintiff clarifies in

his reply, concerns defendant's nonpayment of the $746.22 difference between the

amount stated in the demand letter to the other driver's insurer and the figure that

plaintiff provided in his disclosures.  Docket No. 47 at 1–2.

In his motion, plaintiff argues that, because an insurer's duty of good faith

continues despite the fact litigation has begun, defendant violated this duty when it

"refused to look at any information received during litigation" or "address whether it *ever*

adjusted the claim during litigation."  Docket No. 42 at 7–8.  In the context of plaintiff's

statutory bad faith claim, plaintiff argues that an insurer has a duty to pay undisputed

covered benefits, even if other expenses or benefits are disputed, and that nothing in

either *State Farm Mut. Auto. Ins. v. Fisher*, 418 P.3d 501 (Colo. 2018), or in the bad

faith statute limits this obligation to information obtained prior to litigation.  *Id.* at 12–13.

Defendant, plaintiff argues, has failed to provide any explanation or basis for its denial

of covered benefits.  Docket No. 45 at 13.

*Fisher*, however, does not provide plaintiff the answer that he is looking for.  In

plaintiff's view, defendant's duty of good faith includes an obligation to continue to

adjust a claim as new information is provided, even after litigation has begun.  Because

defendant has accepted only $37,775.75 in past medical expenses, not plaintiff's

---

[14] The dispute appears to be with plaintiff's statement that his initial state-court disclosures, served on August 14, 2019, provided bills totaling $38,521.97.  Plaintiff states that the state-court disclosures corroborated this figure.  *See* Docket No. 42 at 5, ¶¶ 6–7.  Defendant claims that the August 14 disclosures specifically stated that the figure was $40,932.95.  Docket No. 45 at 3–4, ¶ 6.  Plaintiff states that $40,932.95 figure was the result of a mathematical error from one bill being counted twice and, if defendant added the bills itself, plaintiff contends, defendant would have found that the sum was $38,521.97.  Docket No. 47 at 6.

claimed $38,521.97, there is a disputed amount of $746.22.  Applying *Fisher*'s

*undisputed* covered benefit rule, therefore, would not require defendant to release the

*disputed* $746.22.  Nevertheless, because there is a disputed amount of $746.22 in

past medical expenses, the Court will deny defendant's motion for summary judgment

on the portion of plaintiff's statutory bad faith claim concerning past medical expenses.

### 3. General Damages

Defendant also argues that it is entitled to summary judgment on the portion of

plaintiff's statutory bad faith claim concerning plaintiff's "general damages," which

includes plaintiff's non-economic losses, including "injuries, treatment, additional visits

of PT," as well as "physical impairment."  Docket No. 41 at 15.  Defendant argues that

"the undisputed facts confirm that [defendant] evaluated all the information available to

it, and in order to provide the most accurate calculation, obtained the objective

evaluation of an independent medical examiner" and that plaintiff "cannot prove that

[defendant] lacked a reasonable basis when it calculated his claim for damages."  *Id.* at

16.  Defendant valued plaintiff's "general damages" at $19,025.79.  *Id.* at 8–9, ¶ 32.

Defendant calculated the amount of general damages that it found plaintiff entitled to

based on the IME conducted by Dr. Feldman, who concluded that plaintiff could

continue to work with no restrictions, that he was feeling 90 to 95% better and is not

disabled, and that he had reached his "maximum medical improvement."  *Id.* (quoting

Docket No. 41-21 at 7).

Plaintiff disputes the general damages value that Dr. Feldman calculated.

Docket No. 44 at 15.  Based on the opinion of plaintiff's expert Damian Arguello,

plaintiff argues, Dr. Feldman undertook a worker's compensation evaluation, rather than an evaluation under a more appropriate standard. *Id.* Moreover, although defendant had evidence of plaintiff's impairment from at least July 2018, plaintiff argues that it was not reasonable to decline to issue any compensation until it received Dr. Feldman's report in January 2019, which, plaintiff argues, could constitute an unreasonable delay. *Id.*

The dispute between Dr. Feldman's conclusion and Mr. Arguello's constitutes a genuine dispute of material fact that precludes summary judgment on the general damages issue. As the Court has noted, "competing expert opinions present the classic battle of the experts and it is up to a jury to evaluate what weight and credibility each expert opinion deserves." *OraLabs*, 2015 WL 4538444, at *5; *Leeper*, 2016 WL 1089701, at *4 ("[T]he Court cannot conclude that no reasonable jury could find that Allstate acted unreasonably in preferring Dr. Douthit's opinion to Dr. Parker's contrary opinion without weighing those opinions and drawing conclusions as to their respective value."). Because there are factual disputes regarding plaintiff's claim for general damages, the Court will deny that portion of defendant's summary judgment motion on the issue of general damages in plaintiff's statutory bad faith claim.

### B.  Common-Law Bad Faith

For the insured to prevail on a common-law bad faith claim, the insured must prove that (1) the insurer's conduct was unreasonable, and (2) the insurer either had knowledge of or reckless disregard for the fact that its conduct was unreasonable. *Savio*, 706 P.2d at 1275; *see also Dale*, 948 P.2d at 551. As stated above, "[u]nder

Colorado law, it is reasonable for an insurer to challenge claims that are 'fairly debatable.'" *Vaccaro*, 275 P.3d at 759 (citing *Zolman*, 261 P.3d at 496).  The standard to determine liability under a statutory bad faith claim is "whether an insurer denied benefits without a reasonable basis."  *Id.* at 760.  However, "'if a reasonable person would find that the insurer's justification for denying or delaying payment of a claim was 'fairly debatable' (i.e., . . . reasonable minds could disagree as to the coverage-determining facts or law), . . . this weighs against a finding that the insurer acted unreasonably."  *Chateau Vill. N. Condo. Ass'n v. Am. Fam. Mut. Ins. Co.*, 170 F. Supp. 3d 1349, 1360 (D. Colo. 2016) (quoting *Fisher v. State Farm Mut. Auto. Ins. Co.*, 419 P.3d 985, 990 (Colo. App. 2015), *aff'd*, 418 P.3d 501 (Colo. 2018)).

Under common-law bad faith principles, Colorado courts traditionally find that it is reasonable for an insurer to challenge claims that are "fairly debatable."  *Zolman*, 261 P.3d at 496.  Thus, under the common law, finding that an insurer's justification for denying or delaying payment of a claim is "fairly debatable" typically weighs against finding that an insurer acted unreasonably, but "fair debatability is not a threshold inquiry that is outcome determinative as a matter of law, nor is it both the beginning and the end of the analysis in a bad faith case."  *Sanderson*, 251 P.3d at 1217–18. Moreover, where "an insurer maintains a mistaken belief that the claim is not compensable, it may be within the scope of permissible challenge even if its belief is incorrect."  *Brennan v. Farmers All. Mut. Ins. Co.*, 961 P.2d 550, 557 (Colo. App. 1998); *Warren v. Liberty Mut. Fire Ins. Co.*, 691 F. Supp. 2d 1255, 1272 (D. Colo. 2010).

In determining whether an insurer engaged in common-law bad faith, courts

"determine whether [the] claim was properly investigated and whether the results of the investigation were subjected to a reasonable evaluation and review." *Savio*, 706 P.2d at 1275 (quoting *Anderson v. Cont'l Ins. Co.*, 271 N.W.2d 368, 377 (Wisc. 1978)).  A common-law bad faith claim, therefore, requires "an absence of a reasonable basis for denial of policy benefits and the knowledge or reckless disregard of a reasonable basis for a denial." *Id.* (quoting *Anderson*, 271 N.W.2d at 377).  The "knowledge of the lack of a reasonable basis may be inferred and imputed to an insurance company where there is a reckless disregard of a lack of a reasonable basis for denial or a reckless indifference to facts or to proofs submitted by the insured." *Id.* (quoting *Anderson*, 271 N.W.2d at 377).  Therefore, "[i]f an insurer does not know that its denial of or delay in processing a claim filed by its insured is unreasonable, and does not act with reckless disregard of a valid claim, the insurer's conduct would be based upon a permissible, albeit mistaken, belief that the claim is not compensable." *Id.*  But this does not mean that a plaintiff must show that an insurer's conduct is "willful and wanton" because, while a finding that an insurer has engaged in willful and wanton conduct would be sufficient to establish common law-bad faith, willful and wanton conduct is a subset of common-law bad faith, which considers a cumulative course of conduct. *See Dale*, 948 P.2d at 551–52.  Ultimately, an insurance company recklessly disregards the unreasonableness of its coverage position when it acts with knowledge that its position lacks a reasonable basis or when it is deliberately indifferent to information concerning the claim.  Colo. Jury Instr., Civil 25:7 (citing *Savio*, 706 P.2d at 1275–76).

In his complaint, plaintiff argues that defendant engaged in common-law bad

faith by failing to diligently search for evidence that supported his claims and instead sought to discover only evidence that defeated or minimized his claims. Docket No. 5 at 8, ¶¶ 68–69. Plaintiff contends that defendant unreasonably delayed or denied payment of his benefits "without a reasonable basis for doing so, and with knowledge or reckless disregard of a lack of a reasonable for doing so." *Id.*, ¶ 70. Defendant seeks summary judgment on the grounds that plaintiff cannot prove that defendant acted unreasonably under the circumstances or acted with knowledge or reckless disregard. Docket No. 41 at 16. Rather, defendant argues, the evidence "confirms that [defendant] gathered relevant information . . . regarding [p]laintiff's alleged damages, accepted and paid [p]laintiff for all incurred medical expenses and milage, accepted and paid [p]laintiff for his claimed number of missed days from work . . ., and requested and relied upon the results of an [IME] to calculate [p]laintiff's claims for future medical expenses and general damages." *Id.* at 17. Additionally, defendant states that the undisputed facts "negate any claim that [defendant] knew it was being unreasonable or recklessly disregarded the validity of [p]laintiff's claim." *Id.*

Plaintiff argues that there is a genuine dispute of fact as to his common-law bad faith claim because plaintiff has put forward evidence supporting his allegation that defendant acted with deliberate indifference to information beneficial to plaintiff's claim. Docket No. 44 at 17. Specifically, plaintiff states that defendant did not adjust its reserves based on the opinions of plaintiff's treating providers and instead relied exclusively on the IME, declined to consider loss of business revenue in evaluating damages, did not use an outside accountant for computation of plaintiff's lost wages, relied on an improper worker's compensation evaluation, and refused to consider new

information during the litigation. *Id.* at 17–18. Plaintiff also argues that he is entitled to summary judgment because it is undisputed that he supplied defendant with additional medical bills during litigation, yet defendant failed to continue to evaluate his UIM claim. Docket No. 42 at 9–10. The Court has previously addressed the issue of lost wages in evaluating plaintiff's statutory bad faith claim and need not consider the issue again in the common-law context. The Court also notes that plaintiff has provided no authority that could support his argument that it was bad faith for defendant not to retain an outside accountant to calculate plaintiff's lost wages.

Plaintiff has put forth no fact, disputed or otherwise, in either his response to defendant's summary judgment motion or in his own motion, on the issue of reserves. *See* Docket Nos. 44, 42. The sole mention of reserves is statements that defendant did not establish a reserve over $1,000.00 until January 2019, after Dr. Feldman issued the IME, Docket No. 44 at 13–14, and that defendant did not adjust its reserves based on the opinions of plaintiff's experts. *Id.* at 17. As to the first issue, the undisputed facts establish that participating in an IME was a requirement of the policy. Docket No. 41 at 5, ¶ 16. A reasonable jury, therefore, could not find that defendant either knew of or recklessly disregarded the fact that its conduct was unreasonable when considered the IME in its determination of reserves. *See Savio*, 706 P.2d at 1275. As to the second issue, plaintiff has not created a genuine dispute of material fact that defendant knew or recklessly disregarded that its conduct was unreasonable. Although defendant based its coverage determination on the IME report, *see, e.g.*, Docket No. 41 at 13–14, defendant was aware of the information in plaintiff's medical records, including his providers' recommendation for future care, and plaintiff has not created a genuine

25

dispute of material fact that defendant recklessly disregarded this information, even though defendant may have discounted plaintiff's providers' records in favor of the IME. The disputed issue of whether this was reasonable precludes summary judgment on this issue in plaintiff's statutory bad faith claim; however, plaintiff has not shown that there is a genuine dispute of material fact that defendant either knew its conduct was unreasonable or recklessly disregarded that it was.  *See Zolman*, 261 P.3d at 496 (courts traditionally find that it is reasonable for an insurer to challenge claims that are "fairly debatable," which weighs against finding that an insurer acted unreasonably); *Brennan*, 961 P.2d at 557 (where "an insurer maintains a mistaken belief that the claim is not compensable, it may be within the scope of permissible challenge even if its belief is incorrect").

Although there were delays and disagreement, plaintiff has failed to identify a genuine issue of material fact that they were caused by any knowingly or recklessly unreasonable conduct by defendant.  The facts indicate that plaintiff's bad faith claim did not accrue until August 8, 2018, when plaintiff obtained a settlement from the tortfeasor.  Docket No. 41 at 4, ¶ 10; *see also Zbegner v. Allied Prop. & Cas. Ins. Co.*, 455 F. App'x 820, 826 (10th Cir. 2011) (unpublished) (a "bad faith claim for nonpayment of UIM benefits cannot accrue until the insured has obtained a judgment against or . . . settled with the underinsured driver.").  The parties began to schedule the IME, which was required under the policy, on September 25, 2018, but plaintiff did not agree to attend the IME until October 26, 2018.  Docket No. 41 at 5, ¶ 16–19.  On January 11, 2019, defendant submitted payment of $11,809.43, in addition to defendant's earlier settlement checks of $18,855.60, for a claim valuation of $80,665.03 when combined

26

with the $50,000 settlement that plaintiff received from the tortfeasor.  *Id.* at 8–9,

¶¶ 30–32; Docket No. 41-23.  Because plaintiff has failed to identify a genuine issue of

material fact that defendant knew and disregarded that a delay between August 8, 2018

and January 11, 2019 was unreasonable, *see Savio*, 706 P.2d at 1275, the Court will

grant defendant's motion on plaintiff's common-law bad faith claim and enter judgment

against plaintiff on that claim.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendant's Motion for Partial Summary Judgment and

Memorandum Brief in Support Thereof [Docket No. 41] is **GRANTED in part** and

**DENIED in part**.  It is further

**ORDERED** that plaintiff's second claim for relief, for common-law bad faith, is

**DISMISSED with prejudice**.  It is further

**ORDERED** that the portion of plaintiff's third claim for relief, for statutory bad

faith, concerning lost wages is **DISMISSED with prejudice**.  It is further

**ORDERED** that Plaintiff's Motion for Partial Summary Judgment [Docket No. 42]

is **DENIED**.


DATED September 23, 2021.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

27